IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

<pre>
                              *
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,        *

     Plaintiff,                *

                              *

        v.                     *          CIVIL NO.: WDQ-09-2483

                              *

AMX COMMUNICATIONS, LTD.,      *
et al.,
                              *

     Defendants.               *


*    *    *    *    *    *    *    *    *    *    *    *    *
</pre>

MEMORANDUM OPINION

The Equal Employment Opportunity Commission ("the EEOC"),
on behalf of Michelle Tibbs, sued AMX Communications, Ltd. and
others for sex discrimination in violation of Title VII of the
Civil Rights Act of 1964.[1]  For the following reasons, the
Defendants' motion to dismiss for lack of subject matter
jurisdiction will be denied.  The Defendants' motions to dismiss
for lack of personal jurisdiction and for failure to state a
claim,[2] and the EEOC's motion to amend its complaint,[3] will be

---

[1] 42 U.S.C. § 2000e et seq.

[2] The Defendants have also moved to strike portions of exhibits
attached to the EEOC's Opposition to the Motions to Dismiss and
to file a surreply to the EEOC's motion to amend its complaint.

1

denied without prejudice to their renewal after discovery on the
issue of personal jurisdiction.

I.    Background

The Defendants are 13 companies organized and headquartered
in Texas.[4]  Although they are separate entities, *see* Tony Ross
Aff. ¶ 5, Jan. 19, 2010, the Defendants have the same address,
telephone number, and website http://www.amxcompanies.com.
Pl.'s Opp. 2.[5]  The website refers to the 13 companies collect-
ively as "AMX Companies," and states that:

---

For the reasons stated in Part II.C, *infra*, these motions will
be denied without prejudice.

[3] The EEOC has also moved to withdraw Exhibit 4 to its Opposition
to the motions to dismiss and to strike portions of the Tony
Ross Affidavit, which was attached to the motions to dismiss.
The motion to withdraw will be granted as unopposed, and motion
to strike will be denied.

[4] They are: AMX Communications, Ltd.; AllCorp Partners
Acquisition, Ltd.; AMX Environmental Solutions, LP; AMX
Management, Inc.; AMX Veterans Specialty Services, LLC; AMX
Industrial Services, LP; AllCorp Services, Ltd.; AMX Fire
Protection & Security Systems; AMX Environmental Evolution,
Ltd.; AMX Enterprises, LLP; AllCorp Acquisitions, Ltd.; and AMX
Construction & Special Services, LP.

[5] The EEOC referenced the AMX website in its brief, but did not
attach printouts from the site.  Although the website contents
have not been made a part of the record, the Court took judicial
notice of them under Fed. R. Evid. 201(b)(2) as facts "capable
of accurate and ready determination by resort to sources whose
accuracy cannot reasonably be questioned."  *See, e.g.,*
*Renaissance Greeting Cards, Inc. v. Dollar Tree Stores*, Inc.,
405 F. Supp. 2d 680, 684 n.9 (E.D. Va. 2005).

> AMX Companies services include environmental and specialty contracting, Emergency 24/7 [hazardous materials] cleanup of all kinds, asbestos, mold and lead abatement/remediation, demolition, wireless tower construction, commercial and industrial fire sprinkler, security and fire alarm systems installation and monitoring, drywall and acoustical ceilings, industrial scaffolding installation and leasing, as well as other corporate support funds.

*Id.* The website also states that "AMX offers a variety of special construction expertise allowing a 'ONE COMPANY . . . ONE CALL" source for our clients." *Id.* Notwithstanding its web-site, AMX Companies is not a legal entity, but a "description . . . of a group of companies who market their services together." Ross Aff. ¶ 5. Tony Ross is the Chief Executive Officer of all the AMX companies except for AMX Veterans Specialty Services. *Id.* ¶ 9. Each company has a general manager responsible for managing its day-to-day operations, including the hiring and management of employees. *Id.* ¶ 11. Ross gets involved in the operations of a company only at the request of a general manager. *Id.*

Michelle Tibbs, a resident of Kentucky, worked for AMX Communications from December 2006 to July 2007 as a driver/line sweep trainee. Michelle Tibbs Decl. ¶ 2, Feb. 17, 2010. Tibbs was part of an AMX Communications crew hired by General Dynamics to change antennas on wireless communications towers near Columbia, Maryland. *See id.* ¶¶ 2-3. She and the other crew

3

members resided in states other than Maryland and lived in a Columbia hotel paid for by AMX while working on the towers. *Id*. ¶ 2.[6] AMX Communications leased an office in Columbia while the work was completed. *See* Opp., Ex. 1; Reply, Ex. 2.

The crew members would work for 30 consecutive days and then have a 10-day break. *Id*. In January 2006, while on a break, Tibbs contacted Jim Wilson, her supervisor, to "request authorization to return to [her] assignment in Maryland." *Id*. ¶ 9.[7] Wilson told Tibbs that there was currently no work for her, and she would need a line sweep technician certification to return to work. *Id*. Tibbs completed a certification class, and, in July 2007, informed Wilson that she was prepared to return to work. *Id*. ¶ 10. Wilson again told Tibbs that there was no work for her. *Id*. When she asked why, Wilson allegedly told her that Ross had told him to fire her because she was a "harassment suit waiting to happen." *Id*.[8] Wilson asked Tibbs to

[6] An invoice from the hotel lists Tibbs's company as AMX Environmental Solutions, Ltd. *See* Opp., Ex. 2-F.

[7] It is unclear from the record why Wilson's authorization was necessary.

[8] The Defendants have moved to strike this statement from Tibbs's affidavit, arguing, *inter alia*, that it is inadmissible hearsay. Paper No. 27. The statement is included here for context only, as it forms the basis of Tibbs's suit. Because this statement and others challenged by the Defendants are irrelevant to the motions resolved in this Memorandum Opinion, the Court did not determine their admissibility. The Defendants' motion to strike

return her company truck to an AMX office in Nashville, Tennessee. *Id*. The paycheck she received for this was issued on July 12, 2007. Opp., Ex. 2-D.[9] It was Tibbs's last paycheck from AMX. Tibbs Aff. ¶ 11.

On December 18, 2007, Tibbs filed a charge of discrimination with the EEOC, naming "AMX Companies" as the respondent. Opp., Ex. 8-A. On January 16, 2008, the EEOC served Jerri Sanders, whom it believed was AMX Companies' director of human resources, with a Notice of Charge of Discrimination. *Id*., Ex. 8-B. The Notice requested a statement of AMX Companies' position on the charge and informed AMX Companies of the EEOC's mediation program, which, the Notice explained, "gives parties an opportunity to resolve the issues of a charge without extensive investigation or expenditure of resources." *Id*. The Notice included instructions on how to participate in this program. *Id*.

---

will be denied without prejudice to its renewal following jurisdictional discovery.

[9] An AMX Companies' "Personnel Action Request" form dated July 23, 2007, lists July 7, 2007 as Tibbs's last day of work. Opp., Ex. 8-L. It states that Tibbs was "sent home because [AMX] had no more work." *Id*.

On February 13, 2008, Human Resources Director King Torres submitted a position statement on behalf of AMX Companies.[10] *Id.*, 8-C. Torres's letter explained that Tibbs was laid off "due to insufficient work" and that the employees who were retained had experience and certifications in "Tower industry." *Id.* On July 21, 2008, the EEOC sent Torres a Request for Information ("RFI"); the response was due August 6, 2008. Id., Ex. 8-D. Torres did not respond. Gerald S. Kiel Decl. ¶ 4, Feb. 18, 2010. On October 9, 2008, EEOC Investigator Letetia Taylor emailed attorney David Kallus, who represents AMX Communications.[11] *Id.*, Ex. 8-E. Taylor told Kallus that if AMX did not comply with the RFI immediately, the EEOC would issue an administrative subpoena. *Id.*

On November 6, 2008, the EEOC issued a subpoena to "Custodian of Record and/or Rashid Skaf, AMX World Headquar-

---

[10] Torres's letter was on the letterhead of "AMX Companies and Affiliates." The letter begins, "[i]n response[] to your letter on Michelle Tibbs . . . [w]e as AMX Companies disagree with these charges [and] . . . will supply you with information disputing the allegation." Opp., Ex. 8-C.

[11] In his affidavit and in correspondence with the EEOC, Kallus has stated that he represents AMX Communications, but not "AMX Companies," which is not a legal entity. *See* Kallus Aff. ¶ 9, Mar. 26, 2010. Notwithstanding these statements, Kallus listed his current position as "General Counsel,AMX" in a resume the EEOC obtained from the docket of another case involving an AMX company. *See* Opp., Ex.6. Taylor apparently contacted Kallus because she believed he represented AMX Companies. *See* Opp., Ex. 8-E.

ters, 3000 Research Drive, Richardson, Texas 75082." Reply, Ex.

1. A copy was sent to Kallus. Kallus Aff. ¶ 3. In a November

19, 2008 letter to the EEOC, Kallus wrote:

> The subpoena is directed to AMX Worldwide Headquarters
> at 3000 Research Drive . . . . I do not represent an
> entity by that name, nor do I represent an entity at
> that address. Moreover, AMX Companies, who is named
> by Ms. Tibbs in her complaint, is not an existing
> legal entity.

*Id*. ¶ 6. On December 12, 2008, the EEOC issued a subpoena to

"Tony Ross, President and/or Custodian of Record, AMX

Communications, Ltd., 2351 W. Northwest Highway, Suite 2118,

Dallas, Texas 75220." Opp., Ex. 8-F. Kallus received a copy of

the subpoena and responded for AMX Communications on December

26, 2008. *Id*., Ex. 8-G. Attached to Kallus's response were (1)

an "AMX Companies and Affiliates Supervisor's Incident Report,"

(2) a Notice to New Employees stating that "AMX Enterprises,

Inc., has worker's compensation insurance coverage to protect

you," (3) a Job Related Injury Medical Authorization releasing

medical records to AMX Enterprises, (4) payroll records for "AMX

Companies & Affiliates" and (5) a Personnel Action Request for

Tibbs on "AMX Companies" letterhead. Opp., Exs. 8-G – 8-L. On

December 29, 2008, the EEOC informed Kallus it was "treating AMX

Communications, Ltd. as the subject of [its] investigation."

Id., Ex. 8-M. The letter stated:

> Although Ms. Tibbs did not name AMX Communications,
> Ltd. on the face of her charge . . . the naming
> requirements for an administrative charge are not
> absolute.  What matters is not whether Ms. Tibbs named
> the legal entity for whom she worked, but rather
> whether your client received notice of her
> allegations.

*Id.*

On July 24, 2009, the EEOC issued a Reasonable Cause

Determination that "AMX Communications d/b/a AMX Companies &

Affiliates" discriminated against Tibbs on the basis of sex in

violation of Title VII.  *Id.*, Ex. 8-N.  The Determination

explained that "[w]hen the Commission finds that violations have

occurred, it attempts to eliminate the alleged practices by . .

. conciliation," and invited the parties to participate.  *Id.*

On August 13, 2009, the EEOC emailed Kallus a conciliation

proposal.  *Id.*, Ex. 8-O.  On August 21, 2009, Kallus informed

the EEOC that AMX Communications would not participate in

conciliation.  *Id.*, Ex. 8-P.

On September 21, 2009, the EEOC filed this complaint

against the 13 AMX companies.  Paper No. 1.  On January 19,

2010, the Defendants moved to dismiss for lack of personal and

subject matter jurisdiction and for failure to state a claim.

Paper No. 9.  On January 27, 2010, the EEOC moved to strike a

portion of the Ross Affidavit, which was attached to the motion

to dismiss.  Paper No. 10.  On March 1, 2010, the EEOC moved for

leave to amend its complaint.  Paper No. 20.  On March 26, 2010,

the Defendants moved to strike certain exhibits to the EEOC's

opposition to the motions to dismiss.  Paper No. 27.  In

response, the EEOC moved to withdraw Exhibit 4 to its

opposition, the Smith Declaration.  Paper No. 30.[12]  On April 26,

2010, the Defendants moved to file a surreply to the EEOC's

motion to amend.  Paper No. 32.

II.  Analysis

    A.  Motion to Dismiss for Lack of Subject Matter
        Jurisdiction

The Defendants have moved to dismiss for lack of subject

matter jurisdiction on the grounds that Tibbs's EEOC charge was

(1) not verified and (2) failed to comply with Title VII's

naming requirement.

    1.  Standard

The plaintiff has the burden of proving subject matter

jurisdiction.  *See Richmond, Fredericksburg & Potomac R.R. v.*

*United States*, 945 F.2d 765, 768 (4th Cir. 1991).  When, as

here,[13] "the challenge is made, not to the sufficiency of the

---

[12] This unopposed motion will be granted.

[13] In its complaint, the EEOC alleged that "[a]ll conditions
precedent to the institution of this lawsuit have been
fulfilled," by which it meant that Tibbs had exhausted her
administrative remedies.  Compl. ¶ 7.  The Defendants' motion to
dismiss for lack of subject matter jurisdiction challenges this
allegation by arguing that Tibbs failed to follow certain

jurisdictional allegations, but to the underlying facts supporting those allegations, a trial court may go beyond the allegations of the complaint and may consider evidence by affidavit, depositions or live testimony without converting the proceeding to one for summary judgment." *Kim v. United States*, 609 F. Supp. 2d 499, 504 (D. Md. 2009) (*quoting Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)) (internal quotation marks omitted). When the factual predicate of subject matter jurisdiction is challenged, "the presumption of truthfulness normally accorded a complaint's allegation does not apply, and the district court is entitled to decide disputed issues of fact with respect to . . . jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).

2. The Verification Requirement

Under 42 U.S.C. § 2000e-5(b), the EEOC charge must be "in writing under oath or affirmation."[14] EEOC regulations require that a charge "shall be in writing and signed and shall be verified." 29 C.F.R. § 1601.9. The Defendants argue that Tibbs's charge failed to comply with these requirements because

---

mandatory administrative procedures. Thus, the Defendants are not challenging the sufficiency of the jurisdictional allegations but the facts underlying them.

[14] *See also Balazs v. Libenthal*, 32 F.3d 151, 156 (4th Cir. 1994) ("[A] sworn charge of discrimination with the EEOC is a mandatory prerequisite to the validity of the charge.")

it was not notarized. At least two judges in this district have held that the verification requirement may be satisfied by signing the charge under penalty of perjury. *See White v. Mortgage Dynamics, Inc.*, 528 F. Supp. 2d 576, 581 & n.5 (D. Md. 2007); *Lane v. Wal-Mart Stores, Inc.*, 69 F. Supp. 2d 749, 753-54 (D. Md. 1999). These decisions are consistent with the EEOC regulation defining verified as "supported by an unsworn declaration in writing under penalty of perjury." 29 C.F.R. § 1601.3(a). Here, it is undisputed that Tibbs signed the charge under penalty of perjury. Thus, she complied with the verification requirement.

3. The Naming Requirement

A civil action under Title VII may only be brought against a party who was "named in the [EEOC] charge." 42 U.S.C. § 2000e-5(f)(1); *Alvarado v. Bd. of Trustees of Montgomery Cmty. Coll.*, 848 F.2d 457, 458-59 (4th Cir. 1988). The Defendants argue that because Tibbs named "AMX Companies" in the charge rather than each of them individually, the Court lacks subject matter jurisdiction over this suit. That Tibbs's charge referred to the Defendants as "AMX Companies"--which, as noted above is how they refer to themselves on their website and in official correspondence—rather than their legal names does not mean that Tibbs violated the naming requirement. *See Alvardo*,

11

848 F.2d at 460 (naming requirement satisfied when charge named college instead of board of trustee because the two entities were essentially identical).

Even assuming that this collective reference to the Defendants means that they were not "named in the charge," dismissal is not required: failure to name a defendant does not bar a subsequent suit "if the purposes of the naming requirement were substantially met," that is, if (1) defendants received fair notice and (2) the EEOC was able to attempt conciliation. *See Vanguard Justice Soc. v. Inc. v. Hughes*, 471 F. Supp. 670, 687 (D. Md. 1979).[15]

---

[15] *See also Alvarado*, 848 F.2d at 460; *EEOC v. Bouzianis*, 2007 U.S. Dist. LEXIS 56795, at *20-21 (D. Md. Aug. 2, 2007); *Thomas v. BET Sound-Stage Restaurant/Brettco, Inc*., 61 F. Supp. 2d 448, 457 (D. Md. 1999).

The parties reference additional factors that some courts in this circuit have considered in assessing compliance with the naming requirement. *See, e.g., Bouzianis*, 2007 U.S. Dist. LEXIS 56795, at *21. These factors determine whether there is "substantial identity" between the named and unnamed parties, *see id.; Alvarado*, 848 F.2d at 461, and include:

> (1) Whether the role of the unnamed party could through reasonable effort by the complainant be ascertained when the EEOC charge was filed;

> (2) Whether the interests of a named party are so similar to the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings;

The Defendants argue that because Tibbs's charge referred to "AMX Companies"--which is not a legal entity, but a description of a group of companies--they did not receive notice of the charge.  In other words, the Defendants contend that although Tibbs used the description *by which they refer to themselves*, they did not receive notice of her charge.  In response to the EEOC's Notice of Charge of Discrimination,[16] Human Resources Director King Torres, wrote--on AMX Companies letterhead--that "[w]e as AMX Companies disagree with these charges [and] . . . will supply you with information disputing the allegation." Opp., Ex. 8-C.  The Defendants had notice of Tibbs's charge.

Further, the EEOC was able to attempt conciliation.  The Defendants argue that because the EEOC's offer was made only to

---

      (3)  Whether absence from the EEOC proceedings resulted in actual prejudice to the unnamed party; and

      (4)  Whether the unnamed party had in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*Bouzianis*, 2007 U.S. Dist. LEXIS 56795, at *21.  The Court need not assess whether the "substantial identity" exception to the naming require applies here because, as noted above, it is clear that the parties named in the charge and in this suit are the same.

[16] The Notice of Charge of Discrimination also described the EEOC's mediation program and invited AMX Companies to participate in it.  Opp., Ex. 8-B.  Thus, the Defendants were given an opportunity to resolve the matter through informal means.

AMX Communications the other defendants were prejudiced "by not
having the benefit of the EEOC mechanism to avoid suit."  Mot.
to Dismiss 27.  As noted above, all the AMX companies had notice
of the suit and could have chosen to participate in the
investigation and conciliation.  After initially submitting a
position statement on behalf of all the companies, AMX changed
course and began dealing with the EEOC through AMX Communica-
tions and its counsel, David Kallus.  The Defendants cannot now
claim unfair exclusion from the conciliation process.  The
purposes of the naming requirement were satisfied.

        B.  Motion to Dismiss for Lack of Personal Jurisdiction

        All the Defendants except AMX Communications have moved to
dismiss for lack of personal jurisdiction on that ground that
they do not have sufficient contacts with Maryland to be sued
here.[17]  They have submitted the affidavit of Ross that, other
than AMX Communications, none of the Defendants has maintained
offices or agents, owned property, or done business in Maryland.
Ross Aff. ¶ 8.  The Defendants implicitly acknowledge that AMX
Management provided administrative support services--including
payroll services, invoicing and the collection of accounts--for

---

[17] AMX Communications concedes that by leasing an office in
Columbia, Maryland, and completing the antenna replacement
project for General Dynamics at sites throughout Maryland, it
subjected itself to the jurisdiction of this Court.  Mot. to
Dismiss 16-21.

14

AMX Communications while in Maryland.  *See* Ross Aff. ¶ 9.[18]  But

they contend that these services did not subject AMX Management

to personal jurisdiction in Maryland.

    1.  Standard

    The party asserting the claim has the burden of proving

personal jurisdiction.  *See Combs v. Bakker*, 886 F.2d 673, 676

(4th Cir. 1989).  "If the existence of jurisdiction turns on

disputed factual questions, the court may resolve the challenge

on the basis of a separate evidentiary hearing or may defer

ruling pending receipt at trial of evidence relevant to

jurisdiction."  *Id.*  When the Court addresses the question "on

the basis only of motion papers, supporting legal memoranda and

the relevant allegations of a complaint, the burden on the

plaintiff is simply to make a prima facie showing . . . in order

to survive the jurisdictional challenge."  *Id.*  "In deciding

---

[18] The EEOC moved to strike the portion of Ross's affidavit in
which he references the "agreements" the Defendants had with AMX
Management.  Citing Rule 56(e)--which courts look to for
guidance in determining the sufficiency of affidavits supporting
a Rule 12 motion, *see Good v. Loan & Mgmt.*, 2005 WL 106492, at
*2 (D. Md. Jan. 14, 2005)--the EEOC argues that because Ross's
affidavit mentions "agreements" between AMX Management and the
other Defendants, the Defendants were required to attach sworn
or certified copies of the agreements to the affidavit.  *See*
Fed. R. Civ. P. 56(e).  The Defendants have responded by
offering to strike the term "agreements" so that the affidavit
now states only that AMX Management "provides services to the
client companies."  *See* Opp. to Mot. to Strike, Ex. 1.  With
this alteration, the affidavit complies with Rule 56(e).
Accordingly, the motion to strike will be denied.

whether the plaintiff has proved a prima facie case of personal jurisdiction, the district court must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993).

Absent *prima facie* evidence of "general jurisdiction,"[19] the Court must determine whether the Maryland long-arm statute authorizes jurisdiction.[20] *See Ellicott Mach. Corp. v. John*

---

[19] The EEOC does not argue that the Defendants are subject to general jurisdiction.

[20] Under Maryland's long-arm statute, the court may exercise personal jurisdiction over a person or his agent who:

(1) Transacts any business or performs any character of work or service in the State;

(2) Contracts to supply goods, food, services, or manufactured products in the State;

(3) Causes tortious injury in the State by an act or omission in the State;

(4) Causes tortious injury in the State or outside the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;

(5) Has an interest in, uses, or possesses real property in the State; or

(6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation or agreement located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

Md. Code Ann., Cts. & Jud. Proc. § 6-103(b).

*Holland Party, Ltd.*, 995 F.2d 474, 477 (4th Cir. 1993). If it

does, the Court determines whether the exercise of jurisdiction

comports with due process under the Fourteenth Amendment. *Id.*[21]

Because the Maryland long-arm statute is co-extensive with the

scope of jurisdiction permitted by the Due Process Clause, the

statutory and constitutional inquiries merge. *Mohamed v.*

*Michael*, 279 Md. 653, 657, 370 A.2d 551, 553 (1977). But

"analysis under the long-arm statute" is the appropriate first

step in determining personal jurisdiction. *Mackey v. Compass*

*Marketing, Inc.*, 391 Md. 117, 892 A.2d 479, 493 n.6 (2006).

---

The long-arm statute limits jurisdiction to claims
"aris[ing] from any act enumerated in the statute." Md. Code
Ann., Cts. & Jud. Proc. § 6-103(a). A claimant must "identify a
specific . . . provision authorizing jurisdiction," *Ottenheimer*
*Publishers, Inc. v. Playmore, Inc.*, 158 F. Supp. 2d 649, 652 (D.
Md. 2001), and show that its claim "aris[es] from" the activity
specified in that provision. See Md. Code Ann., Cts. & Jud.
Proc. § 6-103(a). Then, "to the extent that a defendant's
activities are covered by the statutory language, the reach of
the statute extends to the outermost boundaries of the due
process clause." *Id.*

[21] "A court's exercise of jurisdiction over a nonresident
defendant comports with due process if the defendant has
'minimum contacts' with the forum, such that to require the
defendant to defend its interests in that state 'does not offend
traditional notions of fair play and substantial justice.'"
*Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334
F.3d 390, 397 (4th Cir. 2009) (quoting *Int'l Shoe Co. v.*
*Washington*, 326 U.S. 310, 316 (1945)). "In determining whether
specific jurisdiction exists, we consider (1) the extent to
which the defendant has purposefully availed itself of the
privilege of conducting activities in the state; (2) whether the
plaintiffs' claims arise out of those activities directed at the
state; and (3) whether the exercise of personal jurisdiction
would be constitutionally 'reasonable.'" *Id.*

2.  The EEOC's Arguments

The EEOC opposes the Defendants' motion to dismiss for lack
of personal jurisdiction with three arguments.  First, it
contends that AMX Companies operated an office in Maryland in
2007 and 2008, thereby subjecting all the Defendants to personal
jurisdiction in the state.  It relies on a 2007 screenshot from
the AMX Companies website that shows an office in Maryland in a
section of the site labeled "Our Locations." Opp., Ex. 1.  The
EEOC argues that, taken with the website's reference to AMX as
"one company," and that the Defendants share a corporate office
in Texas, the 2007 website establishes a *prima facie* case of
personal jurisdiction over all the Defendants.

The website's listing of a Maryland office does not
establish whether any Defendant had contacts with Maryland.  It
is undisputed that the AMX companies are legally separate enti-
ties, and jurisdiction over one does not necessarily establish
jurisdiction over the others.  The EEOC cites no evidence that
any Defendant other than AMX Communications--which leased the
office--used the office or conducted operations in Maryland.
Ross has averred that only AMX Communications has had contact
with Maryland; the EEOC cites nothing to the contrary.

The EEOC's other arguments attempt to establish juris-
diction by showing the interrelatedness of the Defendants'

18

operations.  It argues that the contacts of AMX Communications
with Maryland are sufficient to subject the other Defendants to
personal jurisdiction because the AMX companies operate as a
single employer.[22]  In the alternative, the EEOC argues that AMX
Management and AMX Environmental are subject to personal
jurisdiction because AMX Communications acted as their agent in
Maryland.[23]

Determining whether there is jurisdiction under the single
employer or agency theory is not possible on this record because
the Defendants' relationships are unclear.  Necessary to both

---

[22] The single or "integrated" employer theory is typically
invoked to show that a entity may be subject to liability under
Title VII as an "employer" within the meaning of 42 U.S.C. §
2000-e(b).  *See, e.g.*, *Glunt v. GES Exposition Servs.*, 123 F.
Supp. 2d 847, 874 (D. Md. 2000).  At least three district courts
have recognized that the theory may also be invoked to show that
an entity is subject to personal jurisdiction based on its
relationship to another entity over which jurisdiction has been
established.  *See Moreno v. Crane*, 963 F. Supp. 72, 75 (D.P.R.
1997); *Schrader v. Henningsen Foods, Inc.*, 2009 WL 4043553 (D.
Neb. Nov. 20, 2009); *Wells v. Hosp. Group of Ill.*, 2003 WL
21704416 (N.D. Ill. July 23, 2003).  To determine whether
separate entities acted as a single employer, the Court
considers: "(1) common management, (2) the interrelation between
operations, (3) centralized control of labor relations; and
degree of common ownership."  *Hukill*, 192 F.3d at 442.  The
Fourth Circuit has stated that none of the factors is conclusive
and that the test should not be applied mechanically.  *See id.*
at 442 n.6.  "The factors all point to the ultimate inquiry" of
whether one entity controlled the other.  *See id.*

[23] *See Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 61-62 (4th
Cir. 1993) (court may attribute the actions of a corporation's
agents in the forum state to the corporation for jurisdictional
purposes).

inquiries is a determination whether the entity challenging jurisdiction exercised some control over the entity that is subject to jurisdiction. *See Hukill v. Auto Care, Inc.*, 192 F.3d 437, 442 & n.7 (4th Cir. 1999) (single employer); *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 61 (4th Cir. 1993) (agency).

That the Defendants shared a website, used the "AMX Companies" logo on company correspondence and vehicles, and used AMX Management for administrative support does not show that the companies participated in each other's affairs; it only shows that they marketed their services together. The EEOC cites--and the Court has found--no authority that such an arrangement subjects all the entities to jurisdiction when one of them has had minimum contacts with the forum. Similarly, that the Defendants have officers in common does not show common control: Ross has stated that each company is independently operated. See *Hukill*, 192 F.3d at 443. Although the record suggests an interrelatedness among the Defendants, it does not support the conclusion that all are subject to personal jurisdiction in Maryland.

The EEOC acknowledges that its evidence about the Defendants' interrelatedness is scant, and requests juris-

dictional discovery.[24]   "The dispositive nature of a . . .

challenge to the underlying jurisdictional facts requires the

court to satisfy itself that the record has been fully developed

before deciding the motion."  *EEOC v. Alford*, 142 F.R.D. 283,

286 (E.D. Va. 1992) (permitting discovery on the issue of

whether defendants acted as single employer under Title VII).

Absent a developed record, "a trial court should allow

plaintiffs the opportunity to discover facts to support

jurisdictional allegations."  *Id.* (*quoting Thigpen v. United

States*, 800 F.2d 393, 396-97.  "Moreover, an opportunity for

reasonable discovery is especially important in the context of

Title VII actions because summary disposition is not favored in

the Fourth Circuit, especially on a potentially inadequate

[record]."  *Id*. (internal citations and quotation marks

omitted).  Accordingly, the Court will permit discovery on the

issue of whether the Defendants are subject to personal

jurisdiction.  Discovery shall be completed within 60 days of

the date of this Memorandum Opinion and Order.

      C.  Remaining Motions

      Because the Court has not determined whether it has

personal jurisdiction over the Defendants, it may not grant the

EEOC's motion for leave to file an amended complaint or the

---

[24] The Defendants have not opposed this request.

Defendants' motion to file a surreply to that motion. *See, e.g.*, *Philips v. Mathews*, 1977 U.S. App. LEXIS 13456, at *2 (*citing Arrowsmith v. United Press Int'l*, 320 F.2d 219, 221 (2d Cir. 1963)(Friendly, J.)); 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1351 (3d ed. 2004). Those motions will be denied without prejudice to their renewal following jurisdictional discovery.

III. Conclusion

For the reasons stated above, the Defendants' motion to dismiss for lack of subject matter jurisdiction will be denied with prejudice, and its motions to dismiss for lack of personal jurisdiction, for failure to state a claim, to strike, and to file a surreply will be denied without prejudice. The EEOC's motion to withdraw exhibit will be granted, its motion to strike portions of the Ross Affidavit will be denied with prejudice, and its motion for leave to file an amended complaint will be denied without prejudice.


June 29, 2010__                    _____/s/ _____
Date                               William D. Quarles, Jr.
                                   United States District Judge