IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

<table>
<tr><td>EQUAL EMPLOYMENT<br>OPPORTUNITY COMMISSION,</td><td>*</td><td></td></tr>
<tr><td>Plaintiff,</td><td>*</td><td></td></tr>
<tr><td>v.</td><td>*</td><td>CIVIL NO.: WDQ-09-2483</td></tr>
<tr><td>AMX COMMUNICATIONS, LTD.,<br><i>et al.</i>,</td><td>*</td><td></td></tr>
<tr><td>Defendants.</td><td>*</td><td></td></tr>
</table>

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

MEMORANDUM OPINION

The Equal Employment Opportunity Commission ("EEOC"), on
behalf of Michelle Tibbs, sued AMX Communications, Ltd., AMX
Management, Inc., and related entities[1] for sex discrimination in
violation of Title VII of the Civil Rights Act of 1964. For the
following reasons, AMX Communications, Ltd.'s motion to dismiss
will be granted in part, and denied in part. The motion to
dismiss for lack of personal jurisdiction filed by the other
Defendants will be granted except as to AMX Management, Inc.

---

[1]    The related entities are:  AllCorp Partners Acquisition,
Ltd.; AMX Environmental Solutions, LP;  AMX Veterans Specialty
Services, LLC; AMX Industrial Services, LP; AllCorp Services,
Ltd.;  AMX Fire Protection & Security Systems;  AMX
Environmental, Ltd.; AMX Environmental Evolution, Ltd.; AMX
Enterprises, LLP; AllCorp Acquisitions, Ltd., and AMX
Construction & Specialty Services, LP.

I.    Background[2]

    1.    The AMX Entities

AMX Communications, Ltd. ("Communications"), an operating company that installed wireless communications towers, is one of several entities set up by Tony Ross in 2002 to allow the original AMX entity, AMX Enterprises, Inc., to continue operating on cash basis accounting.    Tony C. Ross Dep. 37:22-39:8.[3]    At that time, Ross converted AMX Enterprises, Inc. into AMX Enterprises, LLP, and then formed three entities wholly owned by AMX Enterprises, LLP: (1) AMX Management, Inc. ("Management"); (2) AMX Environmental GP, LLC, and (3) AMX Communications GP, LLC.    ECF No. 45, Ex. 3.    AMX Communications GP, LLC is the general partner and one percent owner of Communications; AMX Enterprises, LLP owns the other 99 percent. *Id.*[4]

---

[2]    For AMX Communications, Ltd.'s motion to dismiss, the well-pled allegations in the EEOC's complaint are accepted as true. *Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir. 1993). For the motion to dismiss for lack of personal jurisdiction, all "disputed facts and reasonable inferences" are drawn in the EEOC's favor.    *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.,* 334 F.3d 390, 396 (4th Cir. 2003).

[3]    The entities are organized and headquartered in Texas.    *See* ECF No. 37 at 1.

[4]    AMX Environmental GP, LLC was the general partner and one percent owner of a similar limited partnership.    ECF No. 45, Ex. 3.    Also in 2002, Ross created AllCorp Partners, LLP, which was the sole member of several LLCs that, like AMX Communications GP, LLC, and AMX Environmental GP, LLC were the general partners

Tom Foley is the president of Management, Communications, and the other AMX entities, and Ross is their CEO. Ross Dep. 45:20-23; 49:1-4. Darin Gregory, a Management employee, is the CFO and treasurer of every "AMX entity." Darin Gregory Dep. 16:17-23. Only Ross and Gregory have access to the bank accounts of each AMX entity; they cannot be accessed by the general managers of each entity. *Id.* 37:25-40:2. Ken Trotter, Management's purchasing manager, controls purchases for the AMX entities, and "anytime [a manager] need[s] to spend money, [he] ha[s] to go through [Trotter]." Ross Dep. 112: 14-25; Everett Foster Dep. 59:6-10.

Ross and Gregory also review customer contracts for the AMX entities, and King Torres, Management's former safety director/risk manager, and Jerri Sanders, Management's former comptroller, handled the human resources functions for Communications and the other AMX entities.[5]  Torres also

and minority owners of limited partnerships with corresponding names. ECF No. 45, Ex. 3.

[5]  They advertised positions, collected resumes, and provided hiring referrals to the other AMX entities. Ross Dep. 107:4-110:10. AMX Management also had control over termination decisions if it wanted, and Torres signed off on reductions-in-force by the other AMX entities after he had made sure they were "valid." *Id.* 87:20-88:25 & 111:4-17; King Torres Dep. 15:2-27:3. Sanders was the custodian of records for the AMX entities and "[k]ep[t] track of all the jobs files for all the different companies." Jerri Sanders Dep. 27:15-24. Several entities share office space, a computer network, and phone lines in Dallas, Texas. *Id.* 65:14-65:5; Ross Dep. 187:14-190:12; Gregory Dep. 101:11-12.

designed and implemented safety policies for the AMX entities. King Torres Dep. 15:14-17:23.

Management provides certain services to Communications and the other AMX entities, including accounting, finance, workers' compensation and insurance negotiation, payroll services, and a shared line of credit. Gregory Dep. 19:14-17. According to Gregory, Management's function is to provide "[a]ll the back-office type functions" so that the "main focus of the limited partnership[s] can be to get work and perform work." *Id.* 17:7-8; 19:18-22.

Michael Massey was Communications's general manager when it expanded into Maryland, and Everett Foster was its operations manager. Michael Massey Dep. 26:18-23; Ross Dep. 44:12-15. Although Massey decided the companies from which Communications would solicit business, Ross held weekly meetings with Massey and the general managers of the other AMX entities, and was aware that Communications operated in Maryland. Ross Dep. 54:15-18; 78:16-18; 79:5-6; Gregory Dep. 63:7-22. Massey would "come to [Ross] if he had an issue [about] how to get something resolved" or how to "get paid" by Communications's clients. Ross Dep. 45 23-46:1; 47:2-6. When Communications began "struggling to stay in business," Management gave it an annual budget so it could remain operational. Massey Dep. 25:20-26:6. In 2008 or 2009, Communications ceased operating. *Id.* 73:11-17.

4

2.    Tibbs's Employment at Communications

In December 2006, Michelle Tibbs began working for Communications as a driver and line sweep trainee. Compl. ¶ 8; ECF No. 41, Ex. 1 at 1. On February 9, 2007, she was terminated by Jim Wilson, her direct supervisor, who told Tibbs there was "insufficient work." ECF No. 41, Ex. 3. When she was terminated, Wilson "made repeated promises that [Tibbs] would be brought back as soon as work was available." *Id.*

In April 2007, Wilson told Tibbs that she would be returned to work if she obtained a line sweep technician certification. *Id.* Tibbs enrolled in a class and received the certification that same month, but was not rehired. *Id.* Tibbs was told by a co-worker that Ross had directed Wilson to terminate her and refuse to allow Tibbs to be rehired because "as the only female on [her] crew," she "was a sexual harassment lawsuit waiting to happen." *Id.* On July 17, 2007, Foster told Tibbs that she "didn't work for the company anymore and . . . was not coming back." *Id.*

On November 2, 2007, Tibbs filed an intake questionnaire with the EEOC complaining that she was discriminated against based on her gender. ECF No. 45, Ex. 2-A. Attached to the questionnaire was a list of four witnesses who Tibbs stated "w[ould] tell" the EEOC about the discrimination, and a letter from Tibbs's attorney to Ross explaining that if Communications

did not agree to settle the matter by September 14, 2007, Tibbs would "proceed with filing a claim for sex discrimination." *Id.* at 6-9.[6]

On December 27, 2007, Tibbs filed a formal charge of discrimination, in which she stated that the discrimination began on February 9, 2007, when she was laid off, and lasted through July 17, 2007, when she was not rehired. Gerald S. Kiel Decl. ¶ 4 (d), Ex. B. On January 16, 2008, the EEOC served notice of Tibbs's charge of discrimination on "AMX Companies & Affiliates." *Id.,* Ex. C. On February 13, 2008, Torres responded that the "AMX Companies disagree with these charges." *Id.,* Ex. D.

On July 24, 2009, the EEOC issued a letter of determination finding reasonable cause that Communications had violated Title VII. Kiel Decl. ¶ 4 (j). The letter stated:

> On February 9, 2007, [Communications] terminated [Tibbs's] employment. Credible testimonial evidence gathered during the investigation revealed that a management official instructed [Tibbs's] supervisor to terminate her employment because she was the only woman working with the male crew and 'she would be a sexual harassment lawsuit waiting to happen.' This constitutes direct evidence of sex-based discrimination. Moreover, the record revealed that [Communications] continued to hire males after [Tibbs's] employment was terminated, which contradicts

---

[6] The letter from Tibbs's attorney outlined her expected award: "reinstatement of employment with [Communications]" and "full back bay for the time period between the date of termination and the reinstatement" or a "severance package totaling $49,000.00." *Id.* at 7.

6

> [Communications's] proffered non-discriminatory reason
> for its employment action.

*Id.,* Ex. H at 1.

It also stated:

> [T]he evidence and information obtained during the
> investigation established that [Communications]
> violated Title VII with respect to discharge. This
> determination is final. When the Commission finds
> that violations have occurred, it attempts to
> eliminate the alleged unlawful practices by informal
> methods of conciliation. . . In this regard,
> conciliation of this matter has now begun.

*Id.* at 1-2.

The EEOC submitted a conciliation proposal to

Communications, which Communications declined on August 21, 2009

*Id.,* Ex. J. On August 26, 2009, the EEOC terminated the

conciliation process and told Communications's counsel that it

would consider bringing a suit in federal court. *Id.,* Ex. K.

On September 21, 2009, the EEOC sued the Defendants

alleging that "[s]ince at least January 2007, [Communications]

engaged in unlawful employment practices on the basis of sex

against Ms. Tibbs," which culminated when she was terminated.

Compl. ¶ 9. On June 30, 2010, this Court denied the Defendants'

motion to dismiss for lack of personal jurisdiction to allow

jurisdictional discovery. ECF No. 37. On November 5, 2010,

after discovery, Communications filed its motions to dismiss.

ECF No. 41. On November 12, 2010, the other Defendants filed a

second motion to dismiss for lack of personal jurisdiction.  ECF No. 44.[7]

II.  Analysis

A.  Communications's Motion to Dismiss

Although captioned as a Rule 12 (b)(6) motion to dismiss based on the statute of limitations, Communications's argument is two-fold.  It argues that the complaint should be dismissed because (1) "the EEOC limited its conciliation attempt to only the single, discrete 'employment action'" of Tibbs's February 9, 2007 termination, and Title VII's administrative remedies have not been exhausted as to other instances of discrimination, and (2) although administrative remedies were exhausted as to the February 9, 2007 termination, Tibbs's charge of discrimination was untimely.  ECF No. 41-1 at 1-4, 11-16.

This motion is not entirely within Rule 12 (b)(6).  "A 'failure to exhaust' argument is different than an 'untimeliness' argument."  *Edwards v. Murphy-Brown, LLC,* 760 F. Supp. 2d 607, 613 (E.D. Va. 2011).  "Failure to exhaust administrative remedies precludes a federal court from exercising subject matter jurisdiction in the context of Title VII" and "[s]uch an asserted failure should be analyzed pursuant

---

[7]    On January 3, 2011, the EEOC filed a motion to strike the Defendants' reply to both motions as untimely.  ECF No. 50. That motion will be denied because the reply was timely.  *See* ECF No. 51, Ex. A.

8

to Rule 12 (b)(1), which specifically addresses subject matter jurisdiction." *Id.*

The filing of a timely charge of discrimination with the EEOC "is not a jurisdictional prerequisite to suit in federal court, but a requirement that like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Transworld Airlines, Inc.,* 455 U.S. 385, 393 (1982). Thus, a motion to dismiss challenging the timeliness of the claimant's charge is reviewed under Rule 12 (b)(6). *Edwards,* 760 F. Supp. 2d at 614. Here, the Court will first determine the extent of its subject matter jurisdiction under Rule 12 (b)(1), then address timeliness under Rule 12 (b)(6).[8]

### 1. Standards of Review

#### a. Rule 12 (b)(1)

Under Fed. R. Civ. P. 12 (b)(1), the plaintiff bears the burden of proving subject matter jurisdiction. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States,* 945 F.2d 765, 768 (4th Cir. 1991). In determining whether it has jurisdiction, a court "may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Id.* The motion to dismiss should be granted only if

---

[8] *See Edwards,* 760 F. Supp. 2d at 614-15; *EEOC v. Outback Steak House of Fl., Inc.,* 520 F. Supp. 2d 1250, 1258-59 (D. Colo. 2007) (defendant's motion to dismiss for EEOC's failure to conciliate claims reviewed under 12 (b)(1)).

"the material jurisdictional facts are not in dispute" and the "moving party is entitled to prevail as a matter of law." *Id.*

b.   Rule 12 (b)(6)

Under Fed. R. Civ. P. 12(b)(6), an action may be dismissed for failure to state a claim upon which relief can be granted. Rule 12(b)(6) tests the legal sufficiency of a complaint, but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006).

Affirmative defenses may be raised in a Rule 12(b)(6) motion, but dismissal is only allowed on the basis of an affirmative defense when the facts in the plaintiff's pleadings are sufficient to rule on its applicability. *See Pressley v. Tupperware Long Term Disability Plan,* 553 F.3d 334, 336 (4th Cir. 2009); *Blackstone Realty, LLC v. FDIC,* 244 F.3d 193, 197 (1st Cir. 2001) ("facts establishing the defense must be clear on the face of the plaintiff's pleadings.").

The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Midgal v. Rowe Price-Fleming Int'l Inc.,* 248 F.3d 321, 325-26 (4th Cir. 2001). Although Rule 8's notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each element of the claim advanced. *Bass v. E.I. Dupont de Nemours & Co.,* 324 F.3d 761,

764-65 (4th Cir. 2003). These facts must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

2. Subject Matter Jurisdiction

Communications argues that the Court's subject matter jurisdiction is limited to Tibbs's February 2007 unlawful termination claim because the July 24, 2009 letter of determination only found reasonable cause as to that claim. ECF No. 41-4 at 13. The EEOC argues that there is subject matter jurisdiction over all the allegations in Tibbs's charge of discrimination, and to the extent the complaint and letter of determination differ, "[t]he focus of the letter of determination is on the finding of reasonable cause . . . not on the dates or facts underlying the Commission's findings." ECF No. 46 at 9.

Under Title VII, before the EEOC may file suit in federal court, it must (1) investigate the claimant's charge of discrimination, (2) make a reasonable cause determination about that charge, and (3) attempt in good faith to resolve the employment dispute by informal conciliation for at least 30 days. *See* 42 U.S.C. § 2000e-5; *EECO v. LJAX, Inc.,* 442 F. Supp. 2d 267, 268 (D. Md. 2006). "Proper investigation and conciliation of charges are characterized as jurisdictional

11

prerequisites to a suit by the EEOC on a particular claim."
*EEOC v. Am. Nat'l Bank,* 652 F.2d 1176, 1185 (4th Cir. 1981).[9]

Tibbs charged that she was discriminated against when she
was terminated on February 9, 2007 and when Communications later
refused to rehire her.  There is no dispute that the EEOC
investigated Tibbs's charge of discrimination and made a
reasonable cause determination that her termination was
discriminatory.  The parties also agree that the EEOC attempted
conciliation of that claim.  However, as Communications argues,
the EEOC never made a reasonable cause determination or
conciliated Tibbs's allegation that Communications's failure to
rehire her was discriminatory.

As explained by the Fourth Circuit:

[C]ompletion of the full administrative process is a
prerequisite to the EEOC's power to bring suit in its
own name.  The power is bottomed on an administrative
scheme giving every employer charged with
discrimination under Title VII the opportunity to
correct its fault out of court.  Consistent with this
scheme, [courts] require that a particular charge of
discrimination be the subject of the reasonable cause
determination and conciliation before being subject to
suit by the EEOC.  This requirement . . . protects an
employer charged in the reasonable cause determination
with race discrimination in hiring against being
surprised by a subsequent suit including charges of
race discrimination in layoffs or promotion, or sex
discrimination.  There would have been no prior notice

---

[9]  "Two important purposes are served by this pre-adjudicative
administrative procedure: first, the employer is fully notified
of the violation alleged by the charging party; and second, the
EEOC has the opportunity to consider all the charges and to
attempt their resolution through conciliation and voluntary
compliance."  *Am. Nat'l Bank,* 652 F.2d at 1185.

> to the employer that practices relating to these
> charges were suspect nor an opportunity for the
> employer to remedy the problems out of court.

*Am. Nat'l Bank,* 652 F.2d at 1186 (internal citations omitted).

To the extent the complaint may be interpreted as a claim

for discriminatory failure to rehire, that claim must be

dismissed because the EEOC has not fulfilled the reasonable

cause and conciliation requirements for that employment

practice, and this Court lacks subject matter jurisdiction.[10]

However, the Court does not, as Communications appears to argue,

lack subject matter jurisdiction over the discriminatory

discharge claim to the extent that Tibbs's termination actually

took place on a date other than February 9, 2007; the EEOC

determined there was reasonable cause that Tibbs's termination

was discriminatory and attempted to conciliate that claim.[11]

---

[10]   *See Al-Zubaidy v. Tek Indus., Inc.,* 406 F.3d 1030, 1037 (8th
Cir. 2005)("a discriminatory failure-to-rehire claim is wholly
distinct from a discriminatory discharge claim, and both claims
must be administratively exhausted before a federal court has
jurisdiction."); *EEOC v. LJAX, Inc.,* 442 F. Supp. 2d 267, 267
(D. Md. 2006) (Title VII claim dismissed without prejudice
because it had not been conciliated).

[11]   *See, e.g., Am. Nat'l Bank,* 652 F.2d at 1182-86 (EEOC could
include two branches of bank in its complaint even though its
determination only specified reasonable cause as to one branch;
charges against both branches had been sufficiently part of
administrative process because the discrimination alleged at the
second branch was the same practice alleged at the first, and
the branches were under common control).

3. Statute of Limitations

Communications argues that the discriminatory discharge claim should be dismissed because Tibbs's charge of discrimination was untimely. ECF No. 41-1 at 13-16. The EEOC contends that Tibbs's intake questionnaire constitutes a "charge" and was timely filed within the 300 day period, if that period began to run on February 7, 2009 as Communications argues.

A claimant in Maryland, a deferral state, must file a discrimination charge with the EEOC within 300 days after the allegedly unlawful employment practice. *See* 42 U.S.C. § 2000e-5 (e)(1); *Williams v. Giant Food, Inc.,* 370 F.3d 428 (4th Cir. 2004).

Although Tibbs's formal charge of discrimination was filed more than 300 days after February 7, 2009, an informal EEOC filing, including an intake questionnaire, may be considered a "charge" of discrimination for purposes of the limitations period if it provides "the information required by the regulations" and is "reasonably construed as a request for the [EEOC] to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the

14

employee." *Federal Exp. Corp. v. Holowecki,* 552 U.S. 389, 402 (2008).[12]

Here, the intake questionnaire contains all the information required by the regulations.[13] It also may reasonably be construed as a request for the EEOC's remedial process. The questionnaire states that its "principle purpose" is to "solicit information" but that when it is "the only timely written statement of allegations of employment discrimination, the Commission will . . . consider it to be a sufficient charge of discrimination." ECF No. 46, Ex. 2-A. Along with the questionnaire, Tibbs provided the EEOC with a list of witnesses that she stated "w[ould] tell" the EEOC about the discrimination, and the letter from her attorney stated her intent to file a charge against Communications and outlined the relief she sought. Taking the questionnaire and attachments as a whole, the filing may be viewed as a request by Tibbs that the

---

[12] Although *Holowecki* was an Age Discrimination in Employment Act case, it has been followed in Title VII cases. *See, e.g., Grice v. Baltimore Cnty.,* 2008 WL 4849322, at *4 (D. Md. Nov. 5, 2008) (collecting cases).

[13] The questionnaire gives the names and addresses of Tibbs and Communications, provides a statement of facts constituting the allegedly unlawful practice, provides an approximate number of employees, and states that Tibbs had not previously filed the charge with the EEOC or a state agency. *See* 29 C.F.R. § 1601.12 (a) (1)-(5).

EEOC resolve her dispute with Communications.[14]  Accordingly,

Communications's motion to dismiss will be denied.

   B.   Motion to Dismiss for Lack of Personal Jurisdiction

      1.   Standard of Review

The party asserting the claim has the burden of proving

personal jurisdiction.  *See Combs v. Bakker,* 886 F.2d 673, 676

(4th Cir. 1989).  If jurisdiction turns on disputed facts, the

court may resolve the challenge after a separate evidentiary

hearing, or may defer ruling until receiving, at trial, evidence

relevant to jurisdiction.  *Id.*  If the court determines the

issue without an evidentiary hearing, and relies only on the

complaint, affidavits, and discovery materials, "the plaintiff

need only make a *prima facie* showing of personal jurisdiction."

*Carefirst,* 334 F.3d at 396.  In determining whether the *prima

facie* case has been shown, the court "must draw all reasonable

inferences arising from the proof, and resolve all factual

---

[14]  *See Carson v. Cudd Pressure Control, Inc.,* 299 Fed. Appx.
845, 848 (10th Cir. 2008)(filing was a charge when claimant
stated that he expected "back pay, front pay, [and]
reinstatement of stock incentives," thereby demonstrating his
"intent to seek EEOC assistance in enforcing his perceived
rights"); *Palmer v. Southwest Airlines Co.,* 2009 WL 3462043, at
*6-7 (N.D. Ill. Oct. 23, 2009)(intake questionnaire, which
included statement that it would be considered a charge if it
was the only written statement filed, would be construed by
court as timely charge of discrimination when claimant
identified witnesses who would corroborate her story and stated
that she would provide the EEOC with additional information from
her arbitration transcriptions "presumably to assist in its
investigation.").

16

disputes in the plaintiff's favor." *Mylan Labs., Inc. v. Akzo, N.V.,* 2 F.3d 56, 60 (4th Cir. 1993).

Absent evidence of general jurisdiction, federal courts may exercise personal jurisdiction over a non-resident defendant if (1) the applicable state long-arm statute confers jurisdiction, and (2) the exercise of jurisdiction is consistent with constitutional due process. *Nichols v. G.D. Searle & Co.,* 991 F.2d 1195, 1199 (4th Cir. 1993). Because the Maryland long-arm statute is co-extensive with the scope of jurisdiction permitted by the Due Process Clause, the statutory and constitutional inquiries merge. *Mohamed v. Michael,* 279 Md. 653, 657, 370 A.2d 551, 553 (1977).

    2.    The Defendants' Motion

All the Defendants—except Communications—have moved to dismiss the complaint for lack of personal jurisdiction. ECF No. 44. The EEOC argues that because this Court undisputedly has jurisdiction over Communications as an entity that transacts business in the state, jurisdiction over the other Defendants is also proper because they are part of the same "integrated enterprise." ECF No. 45 at 15. Alternatively, the EEOC argues that jurisdiction over Management is proper because Communications acted as its agent in the state. *Id.* at 29.

### a. Integrated Enterprise Basis of Jurisdiction

Under the "integrated employer test," several companies may be considered so interrelated that they constitute a single employer. *Hukill v. Auto Care, Inc.*, 192 F.3d 437, 442 (4th Cir. 1999). The integrated enterprise test is typically used to determine whether an entity is liable as an "employer" under Title VII or the Family Medical Leave Act. *Glunt v. GES Exposition Servs.*, 123 F. Supp. 2d 847, 874 (D. Md. 2000). Some courts have used the test to assert personal jurisdiction over an entity based on its relationship to an entity over which jurisdiction has been established.[15] In arguing that this Court should adopt this test for personal jurisdiction, the EEOC relies mainly on unpublished decisions of other district courts. It has provided no authority from the Fourth—or any other— Circuit Court of Appeals.

"[J]urisdiction and liability are . . . separate inquiries." *Cent. States Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 944 (7th Cir. 2000). "[T]hat a defendant would be liable under a statute if personal jurisdiction over it could be obtained is irrelevant to the question of whether such jurisdiction can be exercised." *Id.*

---

[15] *See Moreno v. Crane,* 963 F. Supp. 72, 75 (D.P.R. 1997); *Schrader v. Henningsen Foods, Inc.,* 2009 WL 4043553 (D. Neb. Nov. 20, 2009).

18

If a defendant does not have sufficient minimum contacts with the forum, the personal jurisdiction analysis ends "without examining the plaintiff's causes of action." *Id.* at 944-45. The laws on which the suit are based are irrelevant to the jurisdictional inquiry "because a state or federal statute cannot transmogrify insufficient minimum contacts into a basis for personal jurisdiction by making these contacts elements of a cause of action." *Id.* at 945. That "would violate due process." *Id.*

In this case, application of the integrated enterprise test for jurisdictional purposes would violate due process. The Court will not apply the test to assert personal jurisdiction over the Defendants, which aside from Management, appear to have had *no* contacts with Maryland, and no involvement in Communications's operations here.[16]

---

[16] The EEOC has only argued that the following Defendants are subject to jurisdiction on this theory: AllCorp Partners Acquisition, Ltd.; AMX Environmental Solutions, LP; AMX Veterans Specialty Services, LLC; AMX Industrial Services, LP; AllCorp Services, Ltd.; AMX Fire Protection & Security Systems; AMX Environmental, Ltd.; AMX Environmental Evolution, Ltd.; AMX Enterprises, LLP; AllCorp Acquisitions, Ltd., and AMX Construction & Specialty Services, LP. Accordingly, the complaint will be dismissed as to those defendants. *See Walker v. THI of N.M. at Hobbs Ctr.*, 2011 WL 2728946, at *23 (D.N.M. July 6, 2011)(declining, after extensive review of case law, to adopt the integrated enterprise doctrine to show personal jurisdiction; "[t]he single integrated-enterprise doctrine cannot confer jurisdiction where due process would not allow the court to exercise jurisdiction over that defendant"); *Tese-Milner v. De Beers Centenary A.G.*, 613 F. Supp. 2d 404, 414 (S.D.N.Y. 2009)("the Court has not encountered, and Plaintiff

### b. Agency Basis of Jurisdiction Over Management

"The Maryland Court of Appeals . . . has adopted the so-called 'agency' test in deciding whether to pierce the veil separating parent corporations from their subsidiaries for jurisdictional purposes." *Mylan Labs.,* 2 F.3d at 61.[17]  This test "allows a court to attribute the actions of a subsidiary corporation to the foreign parent corporation only if the parent exerts considerable control over the activities of the subsidiary." *Id.*   Factors central to this determination include: (1) "whether significant decisions of the subsidiary must be approved by the parent"; (2) "whether the parent and the subsidiary maintain separate books and records, employ separate accounting procedures, and hold separate directors' meetings"; and (3) "the level of interdependence between parent and subsidiary." *Id.* "Finally, the court must find that [the parent] knew, or should have known, that its conduct would have some impact in Maryland." *Id.*

Management is wholly owned by AMX Enterprises, LLP, which is the sole owner of Communications.  Management's only function

does not offer any legal support for the concept that 'integrated enterprise' has any legal meaning for the purposes of the relevant personal jurisdiction law.").

[17]  Maryland's long arm statute provides that Maryland courts have personal jurisdiction over any defendant "who directly or by an agent . . . transacts any business or performs any character of work or service in the State."  Md. Code Ann, Cts. & Jud. Proc. § 6-103 (b)(1).

appears to be oversight and control of Communications and the other AMX entities. The officers of Management and Communications are the same, and Management also sets Communications's safety policies, approved its reductions-in-force, and controlled its bank account. Massey, Communications's general manager, did not have access to its bank account, and Communications's purchases had to be arranged through Management.

Among other things, Management controlled Communications's accounting, hiring, and contract review. When Communications experienced financial difficulty, Management provided it with the funds to remain operational. Management shared office space with Communications, acted as its custodian of records, and handled its workers' compensation and insurance. The EEOC has also shown that Management was aware of Communications's operations in Maryland. Accordingly, the EEOC has shown a *prima facie* case for personal jurisdiction over Management under the agency theory.[18] The motion to dismiss will be denied as to Management.

---

[18] *Compare Oldcastle,* 198 F. Supp. 2d at 699-99 (agency theory of jurisdiction would not be exercised when parent only prepared tax returns and coordinated leasing programs to obtain preferred rates for subsidiaries); *with Fin. Co. of Am. V. BankAmerica Corp.,* 493 F. Supp. 895 (D. Md. 1980)(plaintiff could proceed on agency theory of jurisdiction when parent approved significant subsidiary decisions including opening branch offices, negotiation and execution of leases, there was a substantial overlap of corporate officers, and the parent provided extensive

III. Conclusion

For the reasons stated above, Communications's motion to dismiss will be granted in part, and denied in part. The motion to dismiss for lack of personal jurisdiction will be granted as to all other Defendants except Management.

Date _____8/4/11_____

_____
William D. Quarles, Jr.
United States District Judge

---

support for the subsidiary including tax and accounting services and the provision of forms and computer systems).